**Dated: June 06, 2019**
**The following is ORDERED:**


_____

**Jennie D. Latta**
**UNITED STATES BANKRUPTCY JUDGE**

_____



UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

In re
DONNA RAY JOHNSON,                                      Case No. 18-27004-L
     Debtor.                                                 Chapter 13

---

DONNA RAY JOHNSON,
     Plaintiff,
v.                                                                    Adv. Proc. No. 18-00294
WELLS FARGO HOME MORTGAGE;
U.S. BANK, N.A., solely as Trustee for
Bluewater Investment Trust, 2017-1;
SELENE FINANCE LP;
SN SERVICING CORPORATION; and
BUNGALOW SERIES REO, LLC;[1]
     Defendants.

---

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

---

     BEFORE THE COURT are Motions to Dismiss filed by each of the Defendants.  The

Plaintiff has filed a single response with respect to each of the motions, and the court has heard

---

[1]  The Defendants listed in the caption have been corrected to indicate their proper names.

oral argument with respect to the motions of SN Servicing Corporation ("SN Servicing") and Bungalow Series REO, LLC ("Bungalow").  The original complaint was filed December 6, 2018.  Selene Finance LP ("Selene") filed a motion to dismiss on January 18, 2019.  Rather than responding to the motion to dismiss, the Plaintiff filed a First Amended Complaint.  This filing resulted in the filing of a second motion to dismiss by Selene and motions to dismiss by the remaining Defendants.

## JURISDICTION

Jurisdiction over a complaint arising under the Bankruptcy Code or arising in or related to a bankruptcy case lies with the district court.  28 U.S.C. § 1334(b).  Pursuant to authority granted to the district courts at 28 U.S.C. § 157(a), the district court for the Western District of Tennessee has referred to the bankruptcy judges of this district all cases arising under title 11 and all proceedings arising under title 11 or arising in or related to a case under title 11.  *In re Jurisdiction and Proceedings Under the Bankruptcy Amendments Act of 1984*, Misc. No. 81-30 (W.D. Tenn. July 10, 1984).

The First Amended Complaint alleges that the property that is the subject of the litigation is property of the bankruptcy estate.  This is not correct.  The property that is the subject of the complaint was the subject of a foreclosure sale conducted and completed while no bankruptcy case was pending and no stay was in effect.  Therefore, the property itself did not become property of the bankruptcy estate and cannot provide a basis for bankruptcy jurisdiction. The complaint also alleges breach of contract, violation of the Truth in Lending Act, 12 C.F.R. Part 226 ("TILA"), negligent misrepresentation, breach of duty under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq. ("RESPA"), wrongful foreclosure, fraud and misrepresentation, civil conspiracy, and conversion of property.  None of the these causes of action arises under the Bankruptcy Code or in a case under the Bankruptcy Code.  Instead, to the extent that the causes of

action asserted by the Plaintiff arose prior to the filing of her bankruptcy petition (or while the bankruptcy case was dismissed), they are property of the Plaintiff's bankruptcy estate. 11 U.S.C. §§ 541(a) and 1306(a)(1). This case is related to the bankruptcy case filed by the Plaintiff because, if successful, it will result in recovery for the benefit of creditors of the bankruptcy estate. *Browning v. Levy*, 283 F.3d 761, 773 (6th Cir. 2002). It is not, however, a core bankruptcy proceeding. *See* 28 U.S.C. § 157(b)(1) and (2).

A bankruptcy judge may hear and finally determine a non-core related proceeding with the consent of all parties to the proceeding. 28 U.S.C. § 157(c)(1) and (2). Consent to adjudication by the bankruptcy judge may be express or implied. *Wellness Int'l Network, Ltd. v. Sharif,* 135 S. Ct. 1932, 1947, 191 L. Ed. 2d 911 (2015). In response to the court's sua sponte order directing the parties to supplement their pleadings, at least one of the Defendants has not consented to the entry of final orders and/or judgment by the bankruptcy judge. Accordingly, the court proposes the following findings of fact and conclusions of law for consideration by the district court.

## FINDINGS OF FACT

According to the First Amended Complaint, on October 2, 2002, the Plaintiff and Andrea Johnson, her husband, conveyed an interest in property known as 3016 Elgin Drive, Memphis, Tennessee (the "Property"), to J. Franklin McCreary, Trustee for World Savings Bank, FSB, by deed of trust to secure an indebtedness owed by the Plaintiff in the maximum aggregate principal amount of $93,792.50. First Amended Complaint, Dkt. No. 28, Ex. 1.

The Plaintiff alleges that an unspecified "Defendant" enticed her to refinance her loan, so that, on October 19, 2004, the Plaintiff and Andrea Johnson, her husband, conveyed an interest in the Property to J. Franklin McCreary, Trustee for World Savings Bank, FSB, to secure an indebtedness owed by the Plaintiff in the maximum aggregate principal amount of $125,000.00 (the "Deed of Trust"). First Amended Complaint, Dkt. No. 28, Ex. 5, ¶ 11.

According to Wells Fargo, Wachovia Corporation acquired World Savings Bank in 2006, and Wells Fargo acquired Wachovia Corporation in 2008. Wells Fargo's Memorandum Supporting Its Motion to Dismiss, Dkt. No. 76, fn. 1. The pleadings routinely refer to Wells Fargo and its predecessors with respect to the loan as "Wells Fargo."

Beginning in 2007, several lawsuits were filed against Wells Fargo and other defendants based upon "Pick-a-Payment" mortgage loans like the one obtained by the Plaintiff originated by Wells Fargo's predecessor-in-interest, Wachovia Corporation. These lawsuits were consolidated into a class action styled *In re Wachovia Corp. "Pick-a Payment" Mortgage Marketing and Sales Practices Litigation*, Case No. M:09-MD-2015-JF in the United States District Court for the Northern District of California (the "Class Action"). First Amended Complaint, Dkt. No. 28, ¶ 21 and Ex. 7. The parties to that class action executed a settlement agreement on December 10, 2010. First Amended Complaint, Dkt. No. 28, Exs. 7 and 11. The First Amended Complaint alleges that the Plaintiff was not provided notice of this settlement and did not receive the benefits of the settlement. First Amended Complaint, Dkt. No. 28, ¶ 21. As the result of the filing of Wells Fargo's Motion to Dismiss, however, the Plaintiff now admits that she received and cashed a settlement check and entered into a loan modification pursuant to the settlement. Plaintiff's Response to the Motions to Dismiss, § 4.E. The 2013 Home Affordable Modification Program Agreement ("HAMP Modification Agreement") extended the maturity date of the loan to February 1, 2053, and forgave $76,769.64 of the principal indebtedness, establishing a new principal balance of $64,500.00. First Amended Complaint, Ex. 8.

Notwithstanding the modification of her loan, the Plaintiff fell behind in her payments, and Wells Fargo gave notice of acceleration. First Amended Complaint, Dkt. No. 28, ¶ 25. In response, Plaintiff filed a petition for relief under Chapter 13 of the Bankruptcy Code on

October 19, 2017, which was dismissed May 1, 2018 (Case No. 17-29235), and a second Chapter 13 petition on May 16, 2018, which was dismissed July 12, 2018 (Case No. 18-24133).

On August 14, 2018, while no bankruptcy case was pending, Wells Fargo assigned the 2004 Deed of Trust to Defendant U.S. Bank Trust National Association, not individually but solely as Trustee for Bluewater Investment Trust 2017-1 ("Bluewater Investment Trust"). First Amended Complaint, Dkt. No. 28, Ex. 3.

On August 21, 2018, the Plaintiff filed a third Chapter 13 petition, which was assigned Case No. 18-27004. Bktcy. Dkt. No. 1. Because two prior bankruptcy petitions had been dismissed in the twelve-month period prior to the filing of this petition, no stay came into effect when the petition was filed. *See* 11 U.S.C. § 362(c)(4)(A). Recognizing this, the Plaintiff filed a Verified Motion to Impose Stay Under Section 362(c) as to All Creditors on August 22, 2018. Bktcy. Dkt. No. 8. Before that motion could be heard, however, the Plaintiff's case was dismissed on September 11, 2018, for failure to timely file her Chapter 13 plan. Bktcy. Dkt. No. 15. The Plaintiff filed an Expedited Motion to Reinstate her case on September 24, 2018. Bktcy. Dkt. No. 19. While that motion was pending, however, the Property was sold. Trustee's Deed, First Amended Complaint, Dkt. 28, Ex. 5. The motion to reinstate was not heard and granted until October 12, 2018. Bktcy. Dkt. No. 23. The motion to impose stay was not re-set for hearing until January 3, 2019. An order temporarily granting the motion to impose the stay was entered January 4, 2019, and an order permanently granting the motion was entered March 19, 2019. Bktcy. Dkt. Nos. 40 and 46.

The Plaintiff received a notice dated August 30, 2018, indicating that servicing of her loan was being transferred from Wells Fargo Home Mortgage to Selene Finance LP, effective August 14, 2018. First Amended Complaint, Dkt. No. 28, Ex. 9. In addition to payment

instructions, the notice included a telephone number for Selene's Loss Mitigation Department. The Plaintiff never attempted to contact Selene's Loss Mitigation Department.

Although the Plaintiff claims not to have received it, attached to Selene's first Motion to Dismiss is a copy of a letter dated September 5, 2018, addressed to the Plaintiff at her home address from Wilson & Associates, P.L.L.C., enclosing a Notice of Trustee's Sale, which informed her that the Property would be sold on September 28, 2018, on or about 11:00 a.m., at the Shelby County Courthouse.  Selene Motion to Dismiss, Dkt. No. 19, Ex. B.  Also attached to the first Motion to Dismiss is a copy of the Proof of Publication showing that Notice of Trustee's Sale was published on September 7, 14, and 21, 2018, in *The Daily News*.  Dkt. No. 19, Ex. A.

The Plaintiff did receive a notice dated September 13, 2018, indicating that servicing of her loan was being transferred from Selene Finance LP to SN Servicing Corporation effective September 28, 2018.  First Amended Complaint, Dkt. No. 28, Ex. 10.

On September 28, 2018, the Property was sold by Wilson & Associates, PLLC, as Successor Trustee, to U.S. Bank National Association [sic], not individually but solely as Trustee for Bluewater Investment Trust 2017-1, for the sum of $70,556.33.  First Amended Complaint, Dkt. No. 28, Ex. 5.

In the Trustee's Deed, which was recorded on October 3, 2018, U.S. Bank Trust National Association, not individually but solely as Trustee for Bluewater Investment Trust, assigned the Deed of Trust to U.S. Bank Trust National Association, as Trustee of the Bungalow Series III Trust.  First Amended Complaint, Dkt. No. 28, Ex. 4.

The Plaintiff alleges that she was notified on November 14, 2018, by an agent of Selene that the Property had been sold to it by Wells Fargo on August 28, 2018, and that Selene sold the Property to Bungalow on September 29, 2018.  The Plaintiff further alleges that another agent of Selene informed her on November 29, 2018, that Selene had acquired the Property on August 14,

2018, and that the Property was foreclosed on September 28, 2018.  First Amended Complaint,

Dkt. No. 28, ¶ 15.  Attached to the First Amended Complaint to support these statements is a copy

of a letter dated October 22, 2018, from The SR Law Group addressed to Andrea Johnson (the

Plaintiff's husband).   The letter instructs Mr. Johnson to vacate the property no later than

October 29, 2018, and indicates that the Property was sold to Bungalow Series REO at a

foreclosure sale held September 29, 2018.  First Amended Complaint, Dkt. No. 28, Ex. 6.  The

letter makes no mention of Selene and the Plaintiff has not included in the exhibits to the First

Amended Complaint any instrument indicating that Selene was ever the owner of the Property.

On December 6, 2018, the Plaintiff filed her original Complaint listing Wells Fargo

Mortgage, Selene Finance LP, and Bungalow Properties, LLC, as Defendants.  Dkt. No. 1.  The

Plaintiff also filed a Motion for Temporary Restraining Order and Preliminary Injunction alleging

that her home was property of the bankruptcy estate and asking that the Defendants be prevented

from transferring the property.  After a brief hearing, the court issued a temporary restraining order

to maintain the status quo until all interested parties could appear.  The motion for preliminary

injunction was eventually heard on February 14, 2019 and was denied because the Plaintiff agreed

that the foreclosure sale was completed while there was no stay pending.  *See* Order Denying

Plaintiff's Motion for Injunctive Relief, which was belatedly presented for entry on March 11,

2019.  Dkt. No. 41.

Following the hearing on the Motion for Preliminary Injunction, the Plaintiff obtained

additional counsel who prepared and filed the First Amended Adversary Complaint on

February 21, 2019.  Dkt. No. 28.  The First Amended Complaint names Wells Fargo Bank, N.A.,

f/k/a/ Wachovia Mortgage f/k/a World Savings Bank, FSB; U.S. Bank N.A., solely as Trustee for

the Bluewater Investment Trust, 2017-1; Selene Finance LP; SN Servicing Corporation; and

Bungalow Series III, REO, LLC, as Defendants. Motions to dismiss have been filed by each of the Defendants.

## CONCLUSIONS OF LAW

### Standards for Considering a Motion to Dismiss

Federal Rule of Civil Procedure 8(a), made applicable in bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7008(a), directs that a pleading provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Pursuant to Bankruptcy Rule 7012(b)(6), a complaint may be dismissed if it fails to state a claim upon which relief can be granted. In reviewing a motion to dismiss a complaint for failure to state a claim, the trial court must "(1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M&G Polymers, USA, LLC,* 561 F.3d 478, 488 (6th Cir. 2009). A motion to dismiss pursuant to Rule 12(b)(6) "should only be granted when the court, upon review of the complaint, is convinced that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Garzoni v. K-Mart Corp. (In re Garzoni)*, 35 Fed. Appx. 182 (6th Cir. 2002).

Although, "[a]s a general rule, matters outside the pleadings may not be considered in ruling on a 12(b)(6) motion to dismiss unless the motion is converted to one for summary judgment under Fed. R. Civ. P. 56[,] … when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting the motion to dismiss into one for summary judgment." *Bash v. Textron Fin. Corp. (In re Fair Fin. Co.)*, 834 F.3d 651, 656-57, n. 1 (2016). Accordingly, "[i]n addition to the allegations in the complaint, the court may also consider other materials that are integral to the complaint, are public records, or are otherwise appropriate for the taking of judicial notice" when determining whether a complaint states a claim upon which relief can be granted. *Wyser-Pratte Mgmt. Co., Inc. v. Telxon Corp.,* 413 F.3d 553, 560 (6th Cir. 2005).

Taken together, the motions to dismiss ask that the court dismiss the adversary proceeding in its entirety, or, failing that, as to each of the individual defendants. The motions will be considered in turn.

### Wells Fargo

In support of its motion to dismiss, Wells Fargo relies upon the Deed of Trust dated October 19, 2004, and the Declaration of Amy Lake, dated March 26, 2019. Ms. Lake is the Client Services Director for Rust Consulting, Inc. ("Rust Consulting"), which served as the class action administrator for the settlement in *In re Wachovia Corp. "Pick-a-Payment" Mortgage Marketing and Sales Practices Litigation,* Case No. 5:09-md-2015 (N.D. Cal.) (the "Class Action Settlement"). One of the allegations made in the Amended Complaint is that the Plaintiff was not notified of the pending settlement. Ms. Lake declares under penalty of perjury that the Plaintiff was listed as a class member in the electronic record provided to Rust Consulting by Wells Fargo; that class notices were sent to 517,783 class members, including the Plaintiff, on January 28, 2011; that the notice was sent to the Plaintiff at her address on Elgin Drive and was never returned as undeliverable; and that a settlement check was mailed to the Plaintiff on October 7, 2011, which cleared the settlement account on October 18, 2011. In addition to the settlement funds, the Plaintiff also received the HAMP Modification Agreement. Plaintiff admits that the settlement check was cashed and that she was a member of the settlement class. Plaintiff's Response, Dkt. No. 88, pp. 25-26.

The Plaintiff has abandoned or withdrawn a number of her claims against Wells Fargo. Specifically, she abandoned Count II based on violation of the Truth in Lending Act; Count III based on negligent misrepresentation; Count V in part, based on fraud and intentional misrepresentation related to the Pick-a-Payment Note and failure to provide compensation under

the Settlement Agreement; and Count VII[2] based on conversion of property.  Claims against Wells

Fargo that remain to be considered are:

| | |
|---|---|
| Count I: | Breach of contract with respect to the Settlement Agreement |
| Count IV: | Wrongful foreclosure |
| Count V (in part): | Fraud and intentional misrepresentation with respect to the Settlement Agreement. |
| Count VI: | Conspiracy to foreclose with U.S. Bank, N.A. |

Each of these counts will be addressed in turn.

**Count I.**  Count I of the First Amended Complaint alleges that Wells Fargo breached the

2010 Class Action Settlement Agreement ("2010 Settlement Agreement") by "offering [Plaintiff]

an illusory loan modification which only exacerbated the Plaintiff's financial loss … and by failing

to pay her, upon information and belief, any money as a result of this settlement."  First Amended

Complaint, Dkt. No. 28, ¶ 26.  The Plaintiff admits that she was offered (and entered into) a loan

modification and that she received a monitory settlement.  To support her contention that the loan

modification did not comply with the 2010 Settlement Agreement, Plaintiff relies upon an order

from the District Court of the Northern District of California dated April 2015 (the "2015 Order").

First Amended Complaint, Dkt. No. 28, Ex. 11.  Plaintiff complains that she received no notice of

the breach of the settlement agreement discussed in this order.

Plaintiff further alleges that the loan modification that she entered into on January 18, 2013,

violated the implied duty of good faith and fair dealing arising from the 2010 Settlement

Agreement.  She alleges that the loan modification she entered into was "designed to fail."  To

demonstrate this, she notes that 50 months after the Hamp Modification Agreement, she has paid

---

[2]  In the First Amended Complaint, Count VII is incorrectly listed as Count IV.  Count IV pertains to Claim for Wrongful Foreclosure and includes paragraphs 44-59.  Count VII pertains to Conversion of Property and includes paragraphs 74-79.  First Amended Complaint, Dkt. No. 28.

in excess of \$22,195.50 to Wells Fargo, but still owes a principal balance in excess of \$63,969.30, meaning that the principal balance has been reduced by only \$537.70 during that period of time.

Plaintiff asks that Wells Fargo be ordered to disgorge all payments received from the Plaintiff in the amount of \$22,195.50, be assessed further compensatory and punitive damages, and be made to pay all attorneys' fees and costs related to the proceeding.

Plaintiff's claim that Wells Fargo's breach of the 2010 Settlement Agreement is demonstrated by the 2015 Order must fail. The 2015 Order deals with how Wells Fargo should determine that a Class B class member was in danger of imminent default on its loan and thus eligible for loan modification review. First Amended Complaint, Dkt. No. 28, Ex. 11. The First Amended Complaint does not contend that the Plaintiff was a Class B class member, nor does it contend that her rights were affected in any way by the method used by Wells Fargo to determine "danger of imminent default." The Plaintiff was offered a loan modification, which she accepted and agreed to on January 18, 2013. The First Amended Complaint alleges that this agreement was "illusory." If so, that is the basis for any claim of breach of contract, not the 2015 Order.

Plaintiff alleges that the HAMP Modification Agreement violated the covenant of good faith and fair dealing implied in the 2010 Settlement Agreement.[3] Wells Fargo responds that the claim is not timely made either under the laws of California or under the laws of Tennessee. It correctly notes that the statute of limitations for breach of a written contract is four years under California law (Cal. Civ. Code P. § 337) and six years under Tennessee law (Tenn. Code Ann. § 28-3-109). Wells Fargo asserts that the date of the HAMP Modification Agreement, January 22, 2013, is the date of breach, and thus that the last possible date for filing an action for breach of

---

[3] To be fair, at certain places in her argument the Plaintiff alleges breach of the 2010 Settlement Agreement and at other times breach of the HAMP Modification. It was the 2010 Settlement Agreement that obligated Wells Fargo to offer the Plaintiff a modification agreement. Since the Plaintiff's theory is that the modification that was offered was illusory, by implication it is the 2010 Settlement Agreement that she claims was breached by the offer of an illusory modification.

the 2010 Settlement Agreement was January 22, 2019, using Tennessee's longer limitations period. The first allegation of breach of contract was made in the First Amended Complaint, filed February 21, 2019. Plaintiff responds that she did not discover Wells Fargo's breach of the 2010 Settlement Agreement until she sought the advice of counsel after foreclosure proceedings had begun.

Tennessee Code Annotated section 28-3-109(a)(3) provides that "[a]ctions on contracts not otherwise expressly provided for" "be commenced within six (6) years after the cause of action accrued." The Tennessee Supreme Court has specified that a breach of contract cause of action accrues on the date of the breach or, in the case of anticipatory breach, "'when the acts and conduct of one party shows [sic] an intention to no longer be bound by the contract.'" *Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tennessee, Inc.,* 566 S.W.3d 671, 709 (Tenn. 2019) (quoting *Greene v. THGC, Inc.,* 915 S.W.2d 809, 810 (Tenn. Ct. App. 1995)).

The Tennessee Court of Appeals has said that the discovery rule applies to breach of contract actions "when a party either discovers the breach or could have or should have discovered the breach through the exercise of reasonable judgment." *Goot v. Metropolitan Gov't of Nashville & Davidson Cnty,* 2005 WL 3031638, at *11 (Tenn. Ct. App. Nov. 9, 2005). The Tennessee court notes that other courts have invoked the discovery rule where:

> (1) The breach of contract was difficult for the plaintiff to detect, (2) the defendant was in a far superior position to comprehend the breach and the resulting damage, or (3) the defendant had reason to believe that the plaintiff remained ignorant that it had been wronged.

*Id.,* citing *El Pollo Loco, Inc. v. Hashim,* 316 F.3d 1032, 1039 (9th Cir. 2003). Put another way, it said, "the discovery rule applies in cases where the breach of contract is inherently undiscoverable." *Id.,* citing *April Enterprises, Inc. v. KTTV,* 195 Cal. Rptr. at 437; *J.M. Krupar Constr. Co. v. Rosenberg,* 95 S.W.3d 322, 329 (Tex. App. 2002). In a footnote, the court explained:

> The inherently undiscoverable requirement is met when the injured party is unlikely to discover the wrong during the limitations period despite due diligence. To be inherently undiscoverable, the wrong and injury must be unknown to the plaintiff because of their very nature and not because of any fault of the plaintiff. *In re Coastal Plains, Inc.,* 179 F.3d 197, 214-15 (5th Cir. 1999).

*Id.,* at *11, n. 31.

The Tennessee Supreme Court, however, declined to either reject or adopt the *Goot* "inherently undiscoverable" discovery rule in breach of contract cases. *Individual Healthcare Specialists,* 566 S.W.3d at 712. In *Individual Healthcare Specialists* the court declined to apply the discovery rule when it found that the plaintiff had the same access to information and the same ability to request additional information from the defendant throughout the contract period. *Id.,* at 714.

In this case, the Plaintiff has failed to point to any newly discovered information that led to her conclusion that the HAMP Modification Agreement breached the 2010 Settlement Agreement. Despite the allegations in the First Amended Complaint, Plaintiff now admits that she received notice of the 2010 Settlement Agreement and elected to receive the benefits offered by that agreement, including a settlement check and modification of her loan under the Home Affordable Modification Program. The terms of the HAMP Modification Agreement were known to Plaintiff from at least January 18, 2013, when she signed the agreement. The new maturity date is clearly stated in paragraph 3.A. The new principal balance is stated at paragraph 3.B. The deferred principal balance is identified in paragraph 3.C., as is the schedule of interest rates, change dates, and monthly payments. The Plaintiff has not alleged that any of this information was incorrect nor that she was prevented from discussing the modification agreement with counsel of her choice at the time it was offered to her. Plaintiff has simply failed to allege anything that was "discovered" when her modified loan went into default that was not already known by her at the time she signed the modification agreement. In fact, counsel argues that "on its face" the loan

modification does not further the purposes of HAMP.  Plaintiff's Response, Dkt. 88, ¶ 4.E.  If this statement is taken as true, then Plaintiff's cause of action for breach of contract accrued when she received the offer of modification, which must have occurred before she signed the HAMP Modification Agreement on January 18, 2013.  Even under the more generous statute of limitations provided by Tennessee law, Plaintiff's complaint for breach of contract is not timely.  Count I of the First Amended Complaint should be dismissed.

**Count IV.**  Count IV of the First Amended Complaint complains of wrongful foreclosure but makes no specific claim with respect to the conduct of Wells Fargo.[4]  Wells Fargo points out, and the First Amended Complaint agrees, that Wells Fargo assigned the 2004 Deed of Trust to U.S. Bank, as Trustee for Bluewater Investment Trust, prior to foreclosure.  First Amended Complaint, Dkt. No. 28, Ex. 3.  The First Amended Complaint fails to allege any facts with respect to activities of Wells Fargo that would support a claim of wrongful foreclosure.  Count IV of the Complaint should be dismissed as to Wells Fargo.

**Count V (in part).**  With respect to Wells Fargo, Count V of the First Amended Complaint alleges that:  (1) Wells Fargo made false statements that induced Plaintiff to enter into the 2004 Deed of Trust; (2) Wells Fargo failed to pay monetary relief required by the 2010 Settlement Agreement; (3) Wells Fargo failed to offer loan modification required by the 2010 Settlement Agreement; and (4) Wells Fargo offered illusory loan modification.  Plaintiff alleges that she suffered damages as the result of Wells Fargo's false and fraudulent statements.  Each of these claims must fail.  First, any claims arising from false statements made by Wells Fargo with respect to the 2004 Deed of Trust were released by the Plaintiff when she elected to participate in the 2010 Settlement Agreement.  Second, Wells Fargo has proven and the Plaintiff now admits that she did

---

[4]  In fact, the Complaint makes reference to activities of two parties, Ditech Financial LLC and Green Tree Servicing LLC, who are apparently strangers to these transactions.  First Amended Complaint, Dkt. No. 28, ¶ 46.

receive the payment required by the 2010 Settlement Agreement.  Third, Wells Fargo has proven and the Plaintiff admits that it did offer the loan modification required by the 2010 Settlement Agreement.  Fourth, Plaintiff's claim that the HAMP Modification Agreement was "illusory" is barred by the applicable statute of limitations.

**Count VI.**   Count VI of the First Amended Complaint alleges that the Defendants conspired together "to violate the terms of Plaintiff's settlement agreement and breach her mortgage contract."  First Amended Complaint, Dkt. No. 28, ¶ 68.  The Complaint alleges that Wells Fargo violated the terms of the 2010 Settlement Agreement by offering an illusory modification, then pushed the Plaintiff into foreclosure, and transferred title to the property to U.S. Bank.  First Amended Complaint, Dkt. No. 28, ¶ 71.  The Complaint alleges that the other Defendants were involved in transfer of title to the property and transfer of servicing rights, which it characterizes as "sham transfers."  The complaint alleges that the resulting injury was the foreclosure of Plaintiff's home.  First Amended Complaint, Dkt. No. 28, ¶ 72.

Under Tennessee law, a civil conspiracy consists of the following elements: "(1) a common design between two or more persons, (2) to accomplish by concerted action an unlawful purpose, or a lawful purpose by unlawful means, (3) an overt act in furtherance of the conspiracy, and (4) resulting injury." *Hendrickson v. Roane County, Tennessee*, 2019 WL 1756525, at *4 (E.D. Tenn. Apr. 19, 2019), quoting *Kincaid v. SouthTrust Bank,* 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006). Plaintiff argues that Wells Fargo entered into the HAMP Modification Agreement with a lack of good faith and that this provides the requisite tortious act to support her claim of civil conspiracy. She does not allege however, that Wells Fargo entered into the HAMP Modification Agreement in concert with any of the other Defendants.  In order to support a civil conspiracy, the underlying tort or wrongful act must be committed in furtherance of the conspiracy: "Civil conspiracy requires an underlying predicate tort allegedly committed pursuant to the conspiracy."  *Watson's Carpet*

15

*and Floor Coverings, Inc. v. McCormick,* 247 S.W.3d 169, 180 (Tenn. Ct. App. 2007). There is no allegation in the First Amended Complaint that Wells Fargo was in communication with any of the other Defendants when it entered into the HAMP Modification Agreement, and thus, Plaintiff's claim with respect to Wells Fargo must fail.[5]

In the face of Wells Fargo's motion, Plaintiff has failed to raise any genuine issue of fact requiring trial. Each of her claims should be dismissed as a matter of law for the reasons stated.

### U.S. Bank as Trustee for Bluewater Investment Trust

With respect to U.S. Bank, Plaintiff raises claims of wrongful foreclosure (Count IV) and civil conspiracy (Count VI). She has withdrawn her claims of negligence (Count III) and conversion (Count VII). Plaintiff's Response, Dkt. No. 88, ¶ 5. U.S. Bank joins the arguments of Selene and Bungalow in support of its motion to dismiss. The court will consider each of the remaining counts against U.S. Bank in turn.

**Count IV.** Count IV of the First Amended Complaint alleges that the Defendants violated Tennessee Code Annotated section 29-18-101, which provides: "No person shall enter upon any lands, tenements, or other possessions, and detain or hold the same, but were entry is given by law, and then only in a peaceably manner." The complaint alleges that the Plaintiff was not given prior notice of the foreclosure sale as required by the 2004 Deed of Trust. By implication, Plaintiff

---

[5] In her Response to the Motions to Dismiss, Plaintiff appears to introduce another theory. While not explicitly stated, Plaintiff appears to argue that Wells Fargo fraudulently induced her to enter into the HAMP Modification Agreement:

> Wells Fargo entered into this loan modification agreement with a lack of good faith. This is a requisite tortious act. The reason for doing so is clear from its face: to profit financially by deceiving the plaintiff into signing an agreement to pay an amount of money which could only charitably be called "oppressive."

Plaintiff's Response, Dkt. No. 88, ¶ 4.F. Even if this theory were adequately pled, it appears that it too would be barred by the applicable statute of limitations, Tennessee Code Annotated section 28-3-105(1) (three-year limitation for actions for injuries to personal or real property). *See American Fidelity Fire Ins. Co. v. Tucker,* 671 S.W.2d 837 (Tenn. Ct. App. 1983) (Fraud in the inducement of a contract was the common-law action of deceit, and the applicable statute of limitations is Tenn. Code Ann. § 28-3-105, a period of three years.). Moreover, there is again no allegation that the other Defendants participated in or were aware of the offer of the HAMP Modification Agreement, which would be a necessary foundation for the claim of civil conspiracy.

16

asserts that because she was not given notice, sale of her property was unlawful and she should not be dispossessed of it. The First Amended Complaint makes no specific allegation with respect to the activities of U.S. Bank in Count IV.

U.S. Bank responds that it was assigned the 2004 Deed of Trust in August 2018; that it was the winning bidder at foreclosure on September of 2018; and that it subsequently assigned its interest in the Property to Defendant Bungalow, which obtained title pursuant to the Trustee's Deed. It further points out that Plaintiff's allegation that notice of the foreclosure sale was not given pursuant to the terms of the 2004 Deed of Trust is contradicted by the exhibits to the First Amended Complaint.

U.S. Bank's response is supported by the record which contains copies of the following documents:

(1) A Corporate Assignment of Deed of Trust, dated August 14, 2018, which appears as Exhibit 3 to the First Amended Complaint. By it Wells Fargo assigns its interest in the 2004 Deed of Trust to "U.S. Bank Trust National Association, as Trustee for Bluewater Investment Trust 2017-1."

(2) A Trustee's Deed, dated October 2, 2018, which appears as Exhibit 5 to the First Amended Complaint. It recites that pursuant to advertisement and notice, on September 28, 2018, Wilson & Associates, PLLC, Successor Trustee, sold the Property at public outcry to "U.S. Bank National Association, not individually but solely as Trustee for Bluewater Investment Trust 2017-1" for the sum of $70,556.33. The Trustee's Deed further recites that "the said U.S. Bank National Association, not individually but solely as Trustee for Bluewater Investment Trust 2017-1 has assigned its interest in the said property to Bungalow Series REO, LLC." The Trustee's Deed then reflects that pursuant to that assignment, the Successor Trustee conveyed the Property to Bungalow Series REO, LLC, its successors and assigns. Attached to the Trustee's Deed is Proof

of Publication showing publication of the foreclosure notice in *The Daily News* on September 7, 14, and 21, 2018.

(3)  An Assignment of Deed of Trust, dated October 3, 2018, which appears as Exhibit 4 to the First Amended Complaint.  By it "U.S. Bank Trust National Association, not individually but solely as Trustee for Bluewater Investment Trust 2017-1" assigns its interest in the 2004 Deed of Trust to "U.S. Bank Trust National Association as trustee of the Bungalow Series III Trust."

(4)  A Deed of Trust dated October 19, 2004 appears as Exhibit 1 to the Motion to Dismiss filed by Wells Fargo. Dkt. No. 75.  By it the Plaintiff conveyed her interest in the Property to J. Franklin McCreary, as Trustee for World Savings Bank, FSB, to secure repayment of note in the amount of $100,000.00.  Paragraph 28 of the 2004 Deed of Trust requires the trustee to publish notices of a foreclosure sale in the manner provided by applicable law and requires the lender or trustee to mail a copy of the notice of sale to the borrower as provided in paragraph 14. Paragraph 14 provides for notice by delivery or first-class mail to the property address.

(5)  A letter dated September 5, 2018, addressed to the Plaintiff at her home address from Wilson & Associates, PLLC, enclosing a Notice of Trustee's Sale, which informed her that the Property would be sold on September 28, 2018, on or about 11:00 a.m., at the Shelby County Courthouse, which appears as Exhibit 2 to Selene's original Motion to Dismiss, Dkt. No. 19.

Tennessee law requires advertisement of the sale of land to foreclose a deed of trust to be published at least three times in a newspaper in the county where the sale is to be made and a copy of a notice of the sale to be sent to the debtor and any co-debtor.  Tenn. Code Ann. § 35-5-101(a) and (e).  The Trustee's Deed recites that this was done and includes a copy of the notice of publication.  Paragraph 28 of the 2004 Deed of Trust provides that "[t]he recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein."  The Plaintiff has provided no evidence to rebut the statements contained in the Trustee's Deed nor has she pointed

to any failure of U.S. Bank to comply with applicable law or the terms of the 2004 Deed of Trust. At most she has said that she did not receive notice of the foreclosure sale. There is, however, no statutory requirement that the debtor actually receive notice of the sale; only a requirement that notice be delivered or mailed. *See Davis v. Wells Fargo Home Mortgage,* 2018 WL 1560077, at *11 (Tenn. Ct. App. Jan. 31, 2018) (There is no statutory requirement that notice of foreclosure sale be received by the debtor.). Moreover, even if the Substitute Trustee failed to comply with the provisions of the Tennessee Code prior to the sale, that fact would not render the sale void or voidable, nor would it give rise to any cause of action against U.S. Bank. *See* Tenn. Code Ann. §§ 35-5-106 and 35-5-107. *See Johnson v. Flagstar Bank, FSB,* 2012 WL 6569346, *3 (E.D. Tenn. Dec. 17, 2012) (Tennessee foreclosure sale is not void or voidable if the procedures regarding such sales are not met.”); *McSwain v. Am. Gen. Fin., Inc.,* 1994 WL 398819 (Tenn. Ct. App. July 22, 1994); *Conway v. E. Sav. Bank, FSB,* 2006 WL 3613605 (Tenn. Ct. App. Dec. 11, 2006). Count IV of the First Amended Complaint should be dismissed as to U.S. Bank.

**Count VI.** Count VI of the First Amended Complaint alleges civil conspiracy. The only acts alleged with respect to U.S. Bank are the receipt of title to the Property from Wells Fargo, and sale of the Property to itself and ultimately to Bungalow. The record reflects that U.S. Bank, as Trustee for Bluewater Investment, received an assignment of the 2004 Deed of Trust from Wells Fargo; that it directed the exercise of the power of sale provided in the 2004 Deed of Trust; that it was the winning bidder at the foreclosure sale on September 28, 2018; that it assigned its interest in the Property to Bungalow; and that it assigned the 2004 Deed of Trust from itself as Trustee for Bluewater Investment to itself as Trustee for Bungalow. None of these acts is alleged to be unlawful.

Foreclosure by exercise of the power of sale is provided for in the 2004 Deed of Trust. Plaintiff admits that she fell behind in her payments and that Wells Fargo accelerated her note.

The 2004 Deed of Trust provides a power of sale in the event of default.  The record reflects that the foreclosure sale was conducted pursuant to the terms of the deed of trust and Tennessee law. The Plaintiff has not shown that the sale was unlawful nor that the means to accomplish it were unlawful.  Civil conspiracy requires proof, among other elements, that two or more person acted in concert to accomplish an unlawful purpose, or a lawful purpose by unlawful means. *Hendrickson v. Roane County*, 2019 WL 1756525, at *4 (E.D. Tenn. Apr. 19, 2019), quoting *Kincaid v. SouthTrust Bank,* 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006).  Plaintiff has failed to establish this element as to U.S. Bank, and Count VI of the First Amended Complaint should be dismissed as to it.

### Selene Finance LP

Selene acted as servicer for Plaintiff's mortgage loan from August 14, 2018, until September 28, 2018.  First Amended Complaint, Dkt. No. 28, Exs. 9 and 10.  Plaintiff includes Selene in Counts III, Negligent Misrepresentation Claims and Claims for Breach of Duty under RESPA; Count IV, Wrongful Foreclosure; Count V, Fraud and Misrepresentation; and Count VI, Civil Conspiracy.  Each of these will be considered in turn.

**Count III.**  Plaintiff seeks relief against Selene in Count III, Negligent Misrepresentation Claims and Claims for Breach of Duty under RESPA.  That section claims that:

> Selene Finance … had a duty of care to the Plaintiff to use due care in their dealings with the Plaintiff, which included but was not limited to conducting a due diligence inquiry to determine whether they had the actual right to service the loan of the Plaintiff which they purportedly acquired from GMAC, and not to make statements which they knew or should have known were false in regard to her requests for a loan modification.

First Amended Complaint, Dkt. No. 28, ¶ 40.  SN Servicing correctly points out in its memorandum and the record reflects that the Plaintiff's loan was never held by GMAC, and thus could not have been acquired by Selene (or any other Defendant) from GMAC.  Memorandum of Law in Support of Selene Finance LP's Motion to Dismiss Plaintiff's Amended Complaint, Dkt.

No. 36, p. 11.  Further, the First Amended Complaint points to no facts that would call into question the effectiveness or legality of the assignment of the 2004 Deed of Trust to Wells Fargo or to U.S. Bank.

The Plaintiff claims that Selene had duties imposed on it by "the Dodd Frank reforms of the Real Estate Settlement Procedures Act and the Truth in Lending Act which is implemented by Regulation Z which govern how servicers handle certain residential mortgage loans."  First Amended Complaint, Dkt. No. 28, ¶ 40.  These duties, she says, included the duty "to contact the borrower by phone, in person and in writing in the event of a delinquency."  *Id.*  Further, Plaintiff claims that, "if appropriate [,] servicers are required to tell the borrower about loss mitigation options, such as loan modifications, short sales or deeds in lieu of foreclosure."  *Id.*  Plaintiff points to no portion of RESPA that imposes those obligations.  Plaintiff admits that she was notified of her delinquency by Wells Fargo when it was the holder and servicer of her note.  She admits that Wells Fargo accelerated the note prior to the filing of her first bankruptcy case in 2017.  There is no allegation in the First Amended Complaint that the Plaintiff applied for a second loan modification after the HAMP Modification Agreement, and thus no allegation that a loan modification request was pending at or before the time of foreclosure.  Thus, Selene could not have made false statements concerning her request.

The First Amended Complaint alleges that although Selene was servicer of Plaintiff's loan for a period of approximately 15 days before foreclosure, it failed to offer loss mitigation options to her. First Amended Complaint, Dkt. No. 28, ¶ 41.  In a footnote, however, Plaintiff acknowledges that the notice given by Selene does in fact provide contact information for its Loss Mitigation Department.  She says that there was no time for the Plaintiff to respond to the letter before servicing was transferred.  The First Amended Complaint alleges that the Plaintiff has suffered damages in an unspecified amount as the result of Selene's failure to offer loss mitigation.

In summary, the Plaintiff complains that she suffered damages because Selene failed to notify her of a delinquency in her mortgage and failed to timely notify her of the possibility of loss mitigation.

Plaintiff was well aware of the delinquency in her mortgage. The Plaintiff filed the petition that commenced her present Chapter 13 case on August 21, 2018, one week after the transfer of servicing to Selene became effective. This petition followed the dismissal of the Plaintiff's prior Chapter 13 case on July 12, 2018, Case No. 18-24133. That case followed yet another Chapter 13 case dismissed May 1, 2018, Case No. 17-29235. In both of the prior cases and in the present case, the Plaintiff was represented by Juliet Akines, and in all three cases the proposed plan provided for repayment of a substantial arrearage owed to Wells Fargo Mortgage. Prior to the filing of any of these cases, Plaintiff admits that Wells Fargo accelerated the mortgage following her failure to make payments. There was no need for Selene to notify the Plaintiff of a fact that was well known to her – her loan was in default. Selene's failure to notify her of that fact, if any, did not result in loss to the Plaintiff.

Selene, however, did provide the Plaintiff with information about loss mitigation. The telephone number for Selene's Loss Mitigation Department is included in the notice that informed the Plaintiff of the transfer of servicing from Wells Fargo to Selene. Significantly, the First Amended Complaint does not allege that the Plaintiff attempted to contact that department or what the outcome of that contact might have been. If, as Plaintiff alleges, she was confused about whether to contact Selene or SN Servicing, she could have contacted both. There is no allegation that she attempted to contact either.

The sale of the Property did not result from the failure of Selene to give notice of the availability of loss mitigation. It resulted from the failure of the Plaintiff to timely file her Chapter 13 plan, which resulted in the dismissal of her bankruptcy case. Thirteen crucial days elapsed from the dismissal of the case on September 11 until the filing of the missing plan and an

expedited motion to reinstate on September 24, 2018.  As a result of the dismissal of the bankruptcy case, Plaintiff's Expedited Motion to Impose Stay was not heard.  No stay ever came into effect to prevent the foreclosure sale.  This was the cause of Plaintiff's loss, if any.  Count III of the First Amended Complaint should be dismissed as to Selene.

**Count IV.**  Count IV of the First Amended Complaint alleges that Ditech Financial, LLC, and/or Green Tree Servicing, LLC (strangers to this proceeding), failed to suspend foreclosure while a loan modification was pending and thus conducted an illegal foreclosure.  It also alleges that "these Defendants" committed to a modification in a March 22, 2018 letter.  No such letter is referenced anywhere else in the First Amended Complaint.  These allegations appear to have been taken over from another complaint and have nothing to do with the parties to this proceeding.  The remaining allegations of Count IV have to do with the failure of the Plaintiff to receive notice of the foreclosure sale prior to the sale and conflicting information about the sale provided to the Plaintiff by unidentified agents of Selene *after* the sale.

As described above in the discussion of Count IV in relation to Wells Fargo, the record reflects that notice of the sale was given to the Plaintiff in accordance with the 2004 Deed of Trust and Tennessee law.  Receipt of notice by the Plaintiff is not required by either the deed or statute.  Information given by Selene *after* the sale, on the other hand, could not have resulted in injury to the Plaintiff.  Notices that the Plaintiff received after the sale was complete are immaterial to the court's decision with respect to the lawfulness of the foreclosure sale.  Count IV of the First Amended Complaint should be dismissed as to Selene.

**Count V.**  With respect to Selene, Count V of the First Amended Complaint alleges that "[o]n November 29, 2018, an agent of Defendant Selene Finance told Plaintiff that they had mailed by U.S. mail and certified mail thirty days prior to the sale a notice of said sale to Plaintiff's address."  First Amended Complaint, Dkt. No. 28, ¶ 65.  The complaint also makes reference to

assertions made by Selene to the Plaintiff "that the property had been sold at the various times indicated." First Amended Complaint, Dkt. No. 28, ¶ 66. Plaintiff asserts that those statements were false and that she was "deprived of her right to file or the protection of the bankruptcy court by preventing foreclosure." First Amended Complaint, Dkt. No. 28, ¶ 67. As a result, the Plaintiff says, she suffered "substantial damages." *Id.*

> A plaintiff must establish four elements to prove fraud:
>
> (1) an intentional misrepresentation with regard to a material fact; (2) knowledge of the representation's falsity (i.e., it was made "knowingly" or "without belief in its truth," or "recklessly" without regard to its truth or falsity); (3) the plaintiff reasonably relied on the misrepresentation and suffered damage; and (4) the misrepresentation relates to an existing or past fact, or, if the claim is based on promissory fraud, the misrepresentation 'must embody a promise of future action without the present intention to carry out the promise.'

*McMillin v. Lincoln Mem'l Univ.,* 2011 WL 1662544, at *5 (Tenn. Ct. App. May 3, 2011) (quoting *Shahrdar v. Global Hous., Inc*., 983 S.W.2d 230, 237 (Tenn. Ct. App. 1998)); *accord Carter v. Patrick*, 163 S.W.3d 69, 77 (Tenn. Ct. App. 2004) (citing *Stacks v. Saunders*, 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990)). The Plaintiff's claims against Selene must fail because the statements that the Plaintiff claims to have relied upon to her detriment are alleged to have occurred *after* the injury she complains of. Count V of the First Amended Complaint should be dismissed as to Selene.

**Count VI.** With respect to Selene, Count VI of the First Amended Complaint alleges that it conspired with the other Defendants "to violate the terms of the Plaintiff's settlement agreement and breach her mortgage contract." First Amended Complaint, Dkt. No. 28, ¶ 68. There is no allegation of any act on the part of Selene with respect to the 2010 Settlement Agreement. Plaintiff admits that Selene did not become the servicer of her loan until August 14, 2018. Moreover, Plaintiff has not alleged or demonstrated any breach of her mortgage contract. As outlined above, the record reflects that the foreclosure sale was conducted in conformity with the 2004 Deed of

Trust and applicable law.  There is no demonstration of an unlawful act or a lawful act accomplished by unlawful means. Count VI of the First Amended Complaint should be dismissed as to Selene.

### SN Servicing Corporation

SN Servicing serviced the Plaintiff's loan on the day of foreclosure, September 28, 2018. The Plaintiff alleges that she received no contact from SN Servicing whatsoever but acknowledges that she received a notice of the impending transfer of servicing from Selene to SN Service dated September 13, 2018, which informed her that beginning September 28, 2018, she should begin making her payments to and corresponding with SN Servicing.  First Amended Complaint, Dkt. No. 28, Ex. 10.  According to the Trustee's Deed, the foreclosure sale was conducted on that day. First Amended Complaint, Dkt. No. 28, Ex. 5.  Plaintiff seeks relief against SN Servicing in Count III, Negligent Misrepresentation Claims and Claims for Breach of Duty under RESPA.  The allegations with respect to SN Servicing are virtually identical to those with respect to Selene, with the exception that SN Servicing made no statements to the Plaintiff, and servicing of the Plaintiff's loan was not transferred to SN Servicing until the day of the foreclosure sale.

In order to establish a claim for negligence, Plaintiff must show "(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal cause." *Giggers v. Memphis Housing Auth.,* 277 S.W.3d 359, 364 (Tenn. 2009), quoting *McCall v. Wilder,* 913 S.W.2d 150, 153 (Tenn. 1995).  The First Amended Complaint fails to state a claim for common law negligence for a number of reasons.  First, 12 C.F.R. § 1024.41(a) does not impose a duty on a servicer to provide any specific loan modification option.  *See Knott v. Ocwen Loan Servicing, LLC,* 2018 WL 3997825, at * 6 (E.D. Mich. Jan. 29, 2016).  Second, no injury or loss was incurred by the Plaintiff that resulted from the failure of SN Servicing to notify her of the possibility of loan

modification on the day of foreclosure.  RESPA regulations only prevent a loan servicer from
conducting a foreclosure sale while the borrower's loan modification application is pending, and
then only if the complete application is submitted more than 37 days before a foreclosure sale.
12 C.F.R. § 1024.41(g).  Even had SN Servicing given information about loss mitigation options
on the day it received responsibility for servicing Plaintiff's loan, Plaintiff could not have
prevented the foreclosure sale from going forward by submitting a loan modification application.
Count III of the First Amended Complaint should be dismissed as to SN Servicing.

### Bungalow Series REO, LLC

Bungalow was the purchaser of the Property from the Substitute Trustee.  Plaintiff seeks
relief against Bungalow under Count VI of the First Amended Complaint, for civil conspiracy, and
Count VII, for conversion.

**Count VI.**  The First Amended Complaint fails to state a claim for civil conspiracy against
Bungalow for the reasons that have been articulated with respect to the other Defendants.  The
record reflects no unlawful purpose, or unlawful means to accomplish a lawful purpose, employed
by the Defendants.  The record reflects a foreclosure sale conducted pursuant to the terms of the
2004 Deed of Trust and applicable Tennessee law.  The First Amended Complaint alleges no "acts"
by Bungalow except the receipt of the assignment of U.S. Bank's interest in the Property after the
foreclosure sale.  Nothing about that assignment is alleged to be unlawful.  Count VI should be
dismissed as to Bungalow.

**Count VII.**  The First Amended Complaint fails to state a claim for conversion.  The tort
of conversion in Tennessee is "the appropriation of [property] to the party's own use and benefit,
by the exercise of dominion over it, in defiance of the plaintiff's right.  *Hanna v. Sheflin,* 275
S.W.3d 423, 427 (Tenn. Ct. App. 2008) (quoting *Barger v. Webb,* 391 S.W.2d 664, 665 (Tenn.
1965).  The *Sheflin* court continues: "To be liable for conversion, the defendant 'need only have

an intent to exercise dominion and control over property that is in fact inconsistent with the plaintiff's rights, and do so.'" *Id. (*quoting *Mammoth Cave Prod. Credit Ass'n v. Oldham,* 569 S.W.2d 833, 836 (Tenn. Ct. App. 1977)).

The Trustee's Deed reflects that between the foreclosure sale and the recordation of the deed, the rights of U.S. Bank as high bidder were assigned to Bungalow and title to the Property was conveyed to Bungalow. In her Response, Plaintiff admits that her conversion claim is derivative of her claim for wrongful foreclosure. "If there has been a wrongful foreclosure," she claims, "Bungalow is liable for conversion." Plaintiff's Response, Dkt. No. 88, ¶ 1.D. The converse is likewise true, however. If there has *not* been a wrongful foreclosure, there has *not* been a conversion. As stated with respect to the other Defendants, the First Amended Complaint fails to identify any manner in which the foreclosure sale was irregular or unlawful. It has articulated no theory upon which the sale could be undone. Bungalow is the record title holder of the Property by virtue of the Trustee's Deed. In seeking possession of the Property, it has not acted in any way inconsistent with the rights of the Plaintiff which were extinguished upon the delivery of the Trustee's Deed. *See In re Johnson,* 213 B.R. 134, 137 (Bankr. W.D. Tenn. 1997) (Under Tennessee law, a foreclosure sale is final when consideration is exchanged and the statute of frauds is satisfied.). Count VII of the First Amended Complaint should be dismissed.

## **Claim for Punitive Damages**

The final unnumbered portion of the First Amended Complaint asks for punitive damages. In her Response to the Motions to Dismiss, Plaintiff acknowledges that her claim for punitive damages is predicated upon the establishment of a civil conspiracy by and among the Defendants. As the First Amended Complaint fails to state a claim for civil conspiracy, the claim for punitive damages likewise should fail.

## CONCLUSION

For the reasons stated above, the First Amended Complaint should be **DISMISSED** as to all Defendants and all Counts.

cc:    All parties and their counsel
         Chapter 13 Trustee